GEORGE CULVER, Respondent, v. WILLIAMS-
BURG CITY FIRE INSURANCE COMPANY,
Appellant.

Kansas City Court of Appeals, January 10, 1910.

1. FIRE INSURANCE: Iron-Safe Clause.   Where the insurance company made no demand for the production and examination of plaintiff's books at the place or neighborhood where the fire occurred and no place was agreed upon for such examination after the loss, the company waived the provision of the policy, forfeiting the same upon a failure to keep the books of account and correctly detailing all purchases and sales of stock.

2. EVIDENCE: Opinion.   A witness who had traded for a stock of goods and had been selling them and buying other goods to replenish his stock for ten months, was qualified to testify as to the value of the goods.

3. INSTRUCTONS: Harmless Error.   The giving of an unnecessary instruction on an issue that was no longer in the case was harmless error.

Culver v. Insurance Co.

Appeal from Linn Circuit Court.—*Hon. John P. Butler*, Judge.

AFFIRMED.

*Fyke & Snider* for appellant.

(1) The judgment should be reversed as to the in-surance on merchandise, because there was a total fail-ure on the part of respondent to "keep books of account correctly detailing all purchases and sales of said stock." Gibson v. Ins. Co., 82 Mo. App. 515; Keet-Roundtree Dry Goods Co. v. Ins. Co., 100 Mo. App. 504-514; Johnson et al. v. Ins. Co., 120 Mo. App. 80-86; Hollenbeck v. Ins. Co., 133 Mo. App. 57-60; Tenn. Mut. Ins. Co. v. Dudley, 65 Ark. 240-45, S. W. 539; Pelican Ins. Co. v. Wilkerson, 53 Ark. 353, 13 S. W. 1103. (2) "The provision as to keeping books of account requires that the insured shall keep such books in such a man-ner as that they shall constitute a record of business transactions which a person of ordinary intelligence ac-customed to accounts can understand." Briefs on the Law of Ins., Cooley, vol. 2, p. 1822, and cases cited. (3) If by any process of reasoning the book alleged to have been kept by respondent is a substantial compliance with his contract, then he breached the contract by failing to produce the same, before he brought suit. Jube v. Ins. Co., 28 Barb. 412. (4) It was as much the duty of the insured to produce his books, if he had any, after the fire upon demand of the insurer as it was to keep books. Raines v. Ins. Co. (Tex. C. C. A.), 77 S. W. 424. (5) The court erred in overruling defend-ant's demurrer to the evidence as to the insurance on merchandise. The undisputed evidence shows a total failure on the part of respondent to comply with the requirements of the iron safe clause. (6) The court erred in giving instruction No. 5, on the part of respond-ent. 1st. It is unintelligible. 2d. It is erroneous because it tells the jury that if plaintiff's failure to

comply with the iron safe clause was not material to the risk, then such failure was no defense. This court has repeatedly held that failure to comply with the iron safe clause precludes a recovery, and the question of materiality to the risk is not involved. Carp v. Insurance Co., 116 Mo. App. 542. (7) Instructions 1 and 2 are erroneous because they submit to the jury a question of law, *i.e.,* "provided, however, said policy of insurance as to said merchandise has not been forfeited by any act or omission of the plaintiff." How could the jury determine whether or not the policy had been forfeited without being advised what act or omission on the part of plaintiff would work a forfeiture?

*R. S. Kathan* and *A. W. Mullins* for respondent.

(1) The instructions given by the court to the jury on behalf of the plaintiff are correct. Instructions 1 and 2 did not submit to the jury a question of law. These instructions directed the jury to find for plaintiff if they found the facts for him hypothetically stated therein, "provided, however, said policy of insurance as to said merchandise has not been forfeited by any act or omission of the plaintiff." Such instructions have long since received the approval of the Supreme Court of this State. Russell & Co. v. Insurance Co., 55 Mo. 585. (2) And if the defendant desired to present its theory of the case to the jury as to the alleged forfeiture of the policy of insurance by the plaintiff it was its duty to ask the court to give appropriate instructions in that regard, and having failed to do so it cannot now be heard to complain. Hall v. Jennings, 87 Mo. App. 627; Wilson v. Railroad, 122 Mo. App. 667; Bank v. Ragsdale, 171 Mo. 186; Cornwell v. Transit Co., 106 Mo. App. 135; Coleman v. Drane, 116 Mo. 394. (3) The defendant's objections to plaintiff's fifth instruction are not well taken. They are two: (1) That the instruction is "unintelligible." As to this we are persuaded that said instruction is unintelligible to defend-

ant, its agents and attorneys only. (2) That "it tells the jury that if plaintiff's failure to comply with the iron safe clause was not material to the risk, then such failure was no defense." The answer to that objection is that the instruction did not so direct the jury. A substantial compliance with the iron safe clause is all the law requires. The defendant's answer is inconsistent in first denying the insurance on the merchandise and then, without admitting the insurance as to the merchandise pleading alleged stipulations and conditions of the policy to show forfeiture. Bank v. Stone, 93 Mo. App. 292; Darrett v. Donnelly, 38 Mo. 492; Adams v. Trigg, 37 Mo. 141; Vette v. Evans, 111 Mo. App. 588.

BROADDUS, P. J.—The plaintiff's action is to recover on two fire insurance policies and is contained in two counts. The first count declares on a policy issued by defendant on July 1, 1908, insuring a certain building in the sum of one thousand dollars; store, furniture and fixtures therein in the sum of two hundred dollars, and general stock of merchandise in the sum of eight hundred dollars, for the period of one year.

The second count is to recover on a policy issued November 11, 1907, to Jones & Fletcher which was transferred to plaintiff; insuring stock of general merchandise in the sum of eight hundred dollars, for one year.

On June 1, 1908, plaintiff exchanged a farm for the store building, furniture, fixtures and merchandise, and he took possession and commenced business a few days thereafter.

Each of the policies contained what is known as the iron safe clause which is pleaded as a defense on the ground of plaintiff's failure to comply therewith. It reads as follows:

"The assured shall take an itemized inventory of the stock hereby covered at least once a year during the life of this policy and shall keep books of account cor-

rectly detailing all purchases and sales of stock and shall keep said inventory and books of account securely locked in a fire proof safe at night, or in some place secure against fire in another building during all the times said store is not open for business, and in case of loss the assured agrees and covenants to produce all such books and inventories, and in event of failure to produce the same this policy shall be null and void and no suit at law shall be maintained thereunder for any loss or claim for damage under said policy."

Fletcher, one of the former owners of the building and stock, in connection with the plaintiff took an inventory of the stock beginning June 1, 1908, and finishing on the 4th day of that month.

Plaintiff carried on the business of buying and selling until August 4, 1908, when during the night the building and contents were destroyed by fire.

It is conceded that defendant was notified of the, loss, but it does not appear that its adjuster was at the place of the fire or the neighborhood where it occurred. And the record fails to show that defendant at any time demanded the production and an inspection of plaintiff's inventory and books. The bare statement of plantiff in speaking of the matter that, "I saw them once at New Cambria," is all that the record contains in reference to the matter. There is nothing to show why plaintiff met defendant's adjuster at New Cambria, but we presume it must have been in reference to his loss.

Plaintiff, in connection with Fletcher, about the 4th of June, 1908, took an inventory of the stock on hand, and while he continued in business he kept a cash book. At the close of each day he entered in his book the amount of money found in the cash drawer. He made no memorandum of the amount of goods sold or purchased but kept on hand the bills made out for those purchased. The expenses of the store were paid out of

the cash received for goods. He sold for cash or exchanged for produce.

The invoice showed at the date of purchase $4713.-67. During the time he was in business he realized from sale of goods according to his statement about $900, and his profits he estimated at about twenty-five per cent. His purchases amounted to $414. After making a reasonable allowance for the expenses of the store which is not shown by the cash book, the plaintiff must have had on hand at the time of the fire over $3000 worth of goods, the total insurance on which would have been below the three-fourths value thereof. At the time plaintiff saw defendant's adjuster at New Cambria about two months after the fire he did not tell him that he had said cash book, for at that time, according to his statement, it was mislaid. Whether the adjuster ever saw the inventory is a matter of conjecture as the record does not show. But we presume he did.

At the trial defendant admitted that it was liable for the loss of the building for the full amount of insurance on that item, and on the fixtures, but denied that it was liable for the loss on the merchandise. Judgment was rendered for plaintiff for the total insurance from which defendant appealed, but only asks that that part of the judgment which embraces the loss on the merchandise be reversed.

Appellant insists that respondent forfeited his policy on the merchandise by his failure to take and safely keep the inventory and books required by said iron-safe clause. The inventory and book in question has received the most critical attention of the appellant. We find, that the inventory, while perhaps not the most complete in all its details as it should be, is sufficiently explicit and will compare favorably with most of those that have come to our attention. The cash book is certainly unsatisfactory in some important respects and in our opinion was not what the terms of the said clause required. But whether the inventory and the book were

such as respondent was required to keep is of no great importance in the view we must take of the case.

Under section 7976, Revised Statutes 1899, "all adjustments, arbitrations, settlement and examination of books, invoices and accounts, shall be had at the town, city or neighborhood where the fire occurs, unless some other place be agreed upon between the insurer and insured after the loss without any regard to any provision in the policy to the contrary." There being no evidence of a demand for production and examination of respondent's inventory and books at the place or the neighborhood where the fire occurred and no place agreed upon for that purpose the appellant waived the forfeiture provision of the policy. [Carp v. Insurance Co., 116 Mo. App. l. c. 543.]

Error is assigned because respondent was permitted to testify to the value of the goods. The reason assigned is that it was not shown that he was competent to testify as to such value. In view of the fact that he had traded for them and been selling them for two months, in the meantime buying other goods to replenish his stock we believe he was qualified to speak as to the value.

Instruction numbered five, given for the plaintiff, is objected to on the ground that: "It is erroneous because it tells the jury that if plaintiff's failure to comply with the iron-safe clause was not material to the risk, then such failure was no defense." The reason assigned for the objection is that a failure to comply with the iron-safe clause precludes a recovery and the materiality of the risk is not involved. But as compliance with the clause was waived as we have seen, we cannot see what it has to do with the plaintiff's right to recover as it was no longer a condition precedent to that right. The instruction was unnecessary, but it could work no prejudice to defendant. The destruction of the goods having been shown the only question left for the jury was as to the extent of plaintiff's loss and

the verdict of the jury on that question is fully war-
ranted by the evidence.

Objections to instructions one and two are consid-
ered of no importance for a similar reason.

The judgment is affirmed.   All concur.